## LONE TREE DITCH CO. et al. v. CYCLONE DITCH CO. et al.

A landowner having acquired riparian rights by his entry on land, prior to the enactment of the water right law of 1881 (Laws Dak. 1881, c. 142), such rights became vested and were not taken away or destroyed by that act.

Rights of a riparian owner to the use of water at common law included the right to use it for irrigation as well as for domestic purposes.

Riparian rights of a pre-emptor attached as of the date of settlement, and not as of the date of patent.

Where, in a contest over rights of water for irrigation purposes, the court found that a hundred inches of water was necessary for the proper irrigation of J.'s riparian lands, it was not essential

that the amount of water in the stream or the number of persons holding riparian rights should be proved, to define the amount of J.'s reasonable use, as against plaintiff, whose only right to the water as against J. was to prevent him from wasting it.

The riparian law recognizes no riparian rights as gained through prior settlement or appropriation.

As between riparian proprietors using the water of a stream for domestic purposes and for watering stock, the owner whose land lies nearest the source of the stream may use all of the water, if he needs it, to the exclusion of the others; but, with reference to an artificial use including mining, manufacturing, and irrigation, there is no preference as between riparian owners owing to the location of their land, the rights of all being exactly the same, and limited to a reasonable use in view of the rights of all the other riparian owners on the stream.

The amount of water in inches to which a riparian owner may be entitled for irrigation as against other riparian owners is impossible of estimaton, varing continually, not only by the varying volume of water flowing down the stream at different times of the year, or at different years, but also from the amount of land that may have been settled upon, and the extent of the use of the water for ordinary or natural purposes.

(Opinion filed October 12, 1910.)

On rehearing. Modified and remanded, with directions.

For former opinion, see 15 S. D. 519, 91 N. W. 352.

*Charles W. Brown* and *Ivan W. Goodner*, for appellants. *Chauncey L. Wood* and *Chas. J. Buell*, for respondent Jolly.

WHITING, P. J. This cause is before us upon rehearing, the former opinion of this court being found in 15 S. D. 519, 91 N. W. 352, and we refer to such opinion for a statement of some of the facts found by the trial court. In such opinion it was said: "Appellants' first contention is that their water right located March 23, 1882, is prior and superior to the riparian rights of defendant Jolly, acquired by his final proof on August 15, 1882, under the pre-emption laws of the United States; second, that the riparian rights were abolished and abrogated by the water right law of 1881 Laws Dak. 1881, c. 142; third, that the part of the judgment appealed from is in any view erroneous because it ignores the riparian rights of plaintiffs."

Appellant makes no issue, upon this rehearing, as to the correctness of this court's former holding upon the second con-

tention above; but, inasmuch as we are fully satisfied, upon a careful consideration of the issues herein, that, in view of the decision of this court, in such former opinion, to the effect that Jolly's riparian rights dated from his entry upon his land—which entry was prior to plaintiff's claimed appropriation—it was unnecessary then, and it is unnecessary now, to pass upon the question raised by said second contention, we refrain from expressing any view upon this point, leaving it to be determined when its determination may be essential to the decision of some cause. It will readily be seen that, if Jolly's riparian rights were acquired by his entry upon his land, such right became vested before any attempted appropriation by plaintiffs and, in fact, prior to the enactment of the 1881 statute, and such statute could not take away or destroy such vested rights. We fully agree with the views expressed in the former opinion holding that the common law recognized the right of a riparian owner to use water for irrigation purposes as well as for domestic purposes.

The appellants, upon this rehearing, complain of but two matters determined by the former opinion of this court. Appellants contend that the court was in error in its former decision, wherein it held that the riparian rights of Jolly dated from the time of his entry upon his lands; appellants contending, as they did upon the first hearing before this court, that such rights date from date of patent. We are fully satisfied that the former decision of this court is correct; in fact, we do not believe that it is at this date an open question, although there were some early decisions to the contrary. In addition to the authorities cited by this court in its former opinion, we would cite section 658 of Farnham on Waters and Water Rights, p. 2049, as well as the authorities cited in such work.

Appellants further contend that, conceding Jolly's rights as riparian owner were superior to those of the plaintiff corporation, yet his said rights as riparian owner were not superior to the other plaintiffs' rights as riparian owners, and that, therefore, that part of the judgment appealed from, wherein the trial court adjudged that said "Jolly has a prior right to the use of said waters

of the said stream to the amount of 100 miner's inches  *  *  *
for the irrigation of his said riparian lands, and that such right
of said Jolly is prior and superior to any and all rights of the
plaintiffs in or to the waters of said stream, either as riparian
owners, as aforesaid, or as the owners of their said water right
and location, was error." Examination of the plaintiffs' complaint
herein shows that this action was brought relying solely upon
plaintiffs' claimed right to the waters through appropriation, and
that plaintiffs based no rights upon the fact that they were riparian
owners. The court in its findings of fact spoke of plaintiffs'
lands as being "upon and along" the stream in question, but no-
where found directly that such lands were riparian to such
stream. The court, however, in its conclusions of law seemed to
concede that the lands of plaintiffs were riparian to the stream;
the court in one of its conclusions using the following words in
relation to plaintiffs: "Prior to their settlement upon the entry by
their said riparian lands above described." The lands above de-
scribed were the lands owned by the plaintiffs and were fully set
forth in the findings of fact as well as in the complaint herein.

It is the contention of the appellants, as we understand the
same, that, at least as against the riparian rights of plaintiffs other
than plaintiff corporation, the riparian rights of Jolly can have no
precedence; that in law there is no precedence or priority as be-
tween the riparian rights to irrigate lands; and that the court was
therefore in error in decreeing such priority, as well as in fixing
the amount of water to which Jolly should have such prior right.
The appellant further contends that the court was in error in at-
tempting to fix the amount of water to which Jolly would have a
right superior to the rights of plaintiff corporation.

To a clear understanding of the last point raised, we would
call attention to the facts as stated in the former opinion of this
court, and will also note that there were no findings whatever
giving the amount of water flowing down the stream, or the num-
ber of persons holding riparian rights along said stream, and
nothing whatever upon which it would be possible for the court
to base a finding as to what would be a reasonable use of water

by Jolly, taking into consideration the rights of other riparian owners. Was any such finding of the amount reasonable to use necessary as between appellant corporation and Jolly in order for the court to have been justified in its judgment as between these parties? We think not. The court found that 100 inches of water was necessary for the proper irrigation of Jolly's riparian lands. Therefore, the right of Jolly to use 100 inches was lawful as against such corporation, which corporation had no rights to the water as against Jolly, save and except its right to restrain Jolly from any waste of such water. As against the corporation, Jolly had a right to the use of every drop that might be necessary for the proper irrigation of his land, even if, by taking the same, no water was left for the use of such corporation.

A different question arises, however, as between Jolly and those plaintiffs who owned lands riparian to such stream, and who entered upon the same, either in person or through their grantors, prior to the law of 1881. It may be that the trial court would have been fully justified in omitting any reference to the riparian rights of plaintiffs, owing to the condition of the pleadings herein; but when such court undertook, in any manner, to make an adjudication pertaining to the riparian rights of the plaintiffs, they certainly are in position to question such adjudication upon this appeal.

What then are the rights of the various riparian owners as between themselves? We do not think it is necessary to quote largely from, or to cite, a large number of authorities in support of the propositions which we deem to be established as the riparian law of this country. The riparian law recognizes no riparian rights whatever as gained through prior settlement or appropriation. The riparian rights of the owner are the same whether his possession of lands antedates or is subsequent to the possession of other riparian claimants. In fact, these rights are appurtenant to the land to be called into use whenever a person lawfully possessed of the use of the land may see fit to exercise such right. These rights of riparian owners have at all times been divided into two classes, dependent upon the use to which

the water is to be put, which uses have been variously denominated "ordinary" or "extraordinary" and "natural" or "artificial." The so-called ordinary or natural use includes the use of the water for domestic purposes and for watering stock. The extraordinary or artificial use including manufacturing, mining, and irrigation. A wide difference in the nature of these two classes of use for water will be readily recognized. The one use being directly necessary to the preservation of animal life; the other, at the best, but indirectly needful. From this difference in the inherent nature or purpose of the two uses has grown a wide difference in the rules applicable to the two, and while, as to all riparian rights, it is held that a riparian owner may use the water of the stream in any manner that is reasonable and just, keeping in view the rights of all other riparian owners along such stream, a wide distinction is made between what is a reasonable use in the one class and what is a reasonable use in the other class. It is the established law of riparian rights that the riparian owner whose land lies the nearer the source of the stream has, as against those riparian claimants whose land lies lower down, the right to use, for domestic purposes and watering of his stock, if he needs it, all of the water of the stream to the exclusion of the others, this apparently upon the theory that it is better for a few to have water sufficient for their health and well-being, even at the expense of driving others to make their homes elsewhere, than that many should suffer from only a partial supply of water. It also follows that the right of even the owner of the lowest riparian land to water for the so-called ordinary or natural uses, is superior to any riparian claimant's right to use water for extraordinary or artificial purposes. But, when we turn to the law regulating the respective right of those claiming the use of water for extraordinary or artificial purposes, we find an entirely different rule applied, to-wit, that no preference is given to any riparian owner owing to the location of his lands, and the rights of all riparian owners are held to be exactly the same.

It follows, from the above, that the defendant Jolly gained no prior or superior rights over other riparian owners in the use of

the water for irrigation purposes,. either through the priority in point of time of his settlement on his land or from the geographical location of such land. It will also be seen from the foregoing that the amount of water, in inches, to which a riparian owner may be entitled for irrigation as against other riparian owners, is absolutely impossible of estimation, as it must continually vary, not only from the varying volume of water flowing down the stream at different times of the year or during different years, but also from the amount of land that may have been settled upon; and the extent of the use of water for the so-called ordinary or natural purposes which in itself varies with the population of the riparian district and the number of domestic animals kept thereon.

The trial court was therefore in error in adjudging that defendant Jolly had any rights superior, to use of water for irrigation, over those plaintiffs who possessed riparian lands, either to the extent of 100 miner's inches or to any extent whatsoever.

The conclusions of the trial court were certainly inconsistent. We find therein certain conclusions fully sustaining the part of the judgment appealed from, and then as the final conclusion we find the following: "Nor shall anything in said judgment contained be construed to interfere with the right of said Joseph Jolly, or any other owner of lands riparian to Rapid creek, settled upon or entered prior to the said appropriation and location of the waters of said stream by the plaintiffs and their predecessors in interest, to irrigate their said lands from the waters of said Rapid creek through the said Cyclone ditch." A judgment conforming to such conclusion would have been correct.

The judgment of the trial court is modified in part, and the cause remanded to such court, with directions that it modify its judgment to conform to the views expressed herein. Let no costs be taxed herein.